IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| CURTIS A. EVANS and WHIPGOLF, LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | C.A. No. 1:15-cv-000683 |
| PLUSONE SPORTS, LLC, and ALEX VAN ALEN, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON DEFENDANTS' FIFTH, SIXTH, AND SEVENTH COUNTERCLAIMS**

Plaintiffs, Curtis A. Evans and WhipGolf, LLC ("WhipGolf"), submit this Memorandum in Support of their Motion for Summary Judgment on Defendants' Fifth, Sixth, and Seventh Counterclaims.

**INTRODUCTION**

At the last hearing, the parties agreed that counterclaims 1-4 were moot in light of the Court's ruling on the enforceability of the Term Sheet and should be dismissed. Therefore, the current motion for summary judgment addresses why Plaintiffs are entitled to summary judgment on the remaining counterclaims – counterclaims 5 (slander of title), 6 (declaratory judgment that Defendants did not intentionally abandon marks), and 7 (a M.G.L.A. Chapter 93A unfair competition claim).

17233975

## PROCEDURAL HISTORY

On August 3, 2015, Defendants answered the Complaint and asserted seven counterclaims. ECF Nos. 28-29. Plaintiffs answered the counterclaims on August 24, 2015. ECF Nos. 31, 35. The Court granted summary judgment for the Defendants as to the Plaintiffs' claims on March 14, 2016. ECF No. 133 (ruling that the disputed Term Sheet was not enforceable). The Court previously denied Plaintiffs' Motion for Summary Judgment on the Seventh Counterclaim (ECF Nos. 48, 77) on February 2, 2016, but later indicated that it would re-examine the arguments raised therein after discovery was completed. Discovery is complete.

## STATEMENT OF UNDISPUTED FACTS

1. Plaintiffs incorporate by reference the facts submitted in support of their previous Motion for Summary Judgment on Count 7 as if fully set forth herein. ECF No. 48.

2. On October 29, 2013, PlusOne filed "intent to use" trademark applications for the FLINGSTICK and FLINGGOLF marks (Serial No. 86104293 and Serial No. 86104357). Exhibit A to Narod Declaration at ¶ 34.[1]

3. However, PlusOne abandoned them by failing to file a Statement of Use for each mark by December 1, 2014 as required by the USPTO. *See* Exhibit A to Narod Declaration at ¶ 34. The USPTO sent a Notice of Abandonment for each mark, and PlusOne received them. *Id.*

4. PlusOne failed to revive either trademark application within the statutory period for doing so, i.e., by February 2, 2015. *See* Exhibit A to Narod Declaration at ¶ 34. As a result, PlusOne never had any federal trademark registration for the FLINGSTICK or FLINGGOLF marks. *Id.*

---

[1] Attached to this Memorandum is the Declaration of Andrew J. Narod. This Declaration is provided to authenticate the four exhibits needed to dispose of this Motion.

5. Prior to abandoning the applications for the marks on December 1, 2014, PlusOne used each mark in commerce while also unlawfully using the ® symbol to wrongfully indicate that there already existed a federal trademark registration. Exhibit A to Narod Declaration at ¶ 33; Exhibit B to Narod Declaration at ¶¶ 68-81, 83-100. The misuse of the ® symbol necessarily gave the false impression that PlusOne had valid, registered federal trademarks.

6. After PlusOne's statutory period to revive elapsed, WhipGolf filed "intent to use" federal trademark applications for the "FLING" marks on February 3, 2015. Exhibit A to Narod Declaration at ¶ 34.

7. Evans consulted with two separate attorneys before WhipGolf filed the "intent to use" federal trademark applications. *See* Exhibit C to Narod Declaration at p. 28:1-14. Neither attorney advised against the filing. *Id*.

8. After WhipGolf filed its "intent to use" federal trademark applications, PlusOne filed a second set of applications for the "FLING" marks (Serial No. Ser. No. 86/525461 on February 5, 2015 for the mark "FlingStick" and Serial No. 86/526494 on February 6, 2015 for the mark "FlingGolf."). Exhibit A to Narod Declaration at ¶¶ 34, 38. PlusOne based these applications on "actual lawful commercial use," but failed to inform the PTO of its previous false representations regarding use of the ® symbol. *Id*.

9. Evans knew that PlusOne had misused the ® symbol and warned PlusOne to discontinue such misuse. Exhibit C to Narod Declaration at pp. 271-72. PlusOne continued its unlawful use of the ® symbol after this warning. *Id*. at p. 272:4-9.

10. Every one of PlusOne's throw golf product sales prior to WhipGolf's application unlawfully used the ® symbol. Exhibit A to Narod Declaration at ¶ 33; Exhibit B to Narod

3

Declaration at ¶¶ 68-81, 83-100, 128. PlusOne's CEO testified that all of PlusOne's throw golf product sales to date used the ® symbol. Exhibit D to Narod Declaration at p. 237:12-18.

11. PlusOne continues to make inappropriate use of the ® symbol to this date by continuing to manufacture and sell products with the ® symbol. PlusOne used the ® symbol prolifically in a pattern of conduct over many months: on 100% of the products that it has sold, on its website (including media and logos intended for the press), in print advertising, on banners and signage, at tradeshows (including introducing the product at the 2015 PGA Merchandise Show in Orlando, FL, the industry's largest bringing together over 1,000 companies with over 41,000 attending PGA professionals, buyers, and industry leaders), in promotional videos, on a "Rules Card" and "Brochure for Players," and on its Twitter, Facebook, LinkedIn, Vimeo, Google+, Instagram, and YouTube websites. PlusOne admits this use is ongoing. Exhibit A to Narod Declaration at ¶ 33; Exhibit B to Narod Declaration at ¶¶ 68-81, 83-100, 128.

12. Despite the Term Sheet dispute, Plaintiffs offered (completely outside of any proposed settlement context), on October 1, 2015, to license the disputed marks to PlusOne for $1.00. Exhibit D to Narod Declaration at p. 124:6-17. PlusOne refused this license offer. Exhibit D to Narod Declaration at pp. 125-26.

13. Plaintiffs did not cause PlusOne's abandonment of its intent-to-use applications, its failure to revive its applications, or PlusOne's illegal sales.

## ARGUMENT

I.  **STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a).

## II. DEFENDANTS CANNOT ESTABLISH ESSENTIAL ELEMENTS OF A SLANDER OF TITLE COUNTERCLAIM

Counterclaim 5 concerns statements that WhipGolf made to the USPTO in filing "intent to use" trademark applications. The contention is that WhipGolf misled the USPTO by averring that no other person or entity had the right to use the FLING marks in commerce and that WhipGolf had a bona fide intent to use each mark. Plaintiffs are entitled to summary judgment because: (1) the alleged false statement was true as a matter of law; (2) there is no evidence of malice; and (3) there is no evidence that Defendants suffered special damages.

### A. Elements of a Slander of Title Claim

The elements of the tort of slander of title are:

(1)  a false statement;

(2)  published by the defendant;

(3)  without justification or privilege;

(4)  made with malice; and

(5)  causing special damages to the plaintiff.

*Macia v. Microsoft Corp.*, 152 F. Supp. 2d 535, 541 (D. Vt. 2001); *see also Poindexter v. Mercedes-Benz Credit Corp.*, 2014 WL 3827366 at *2 (E.D. Va. July 25, 2014) (Hilton, J.); *Hayes–Broman v. J.P. Morgan Chase Bank, N.A.,* 724 F. Supp. 2d 1003, 1016 (D. Minn. 2010); *Raymond v. Lyden,* 728 A.2d 124, 126 n. 6 (Me. 1999); *Montecalvo v. Mandarelli,* 682 A.2d 918, 923 (R.I. 1996). Special damages are "proof of a special loss or unusual hardship resulting from malicious prosecution." *Ayyildiz v. Kidd,* 220 Va. 1080, 1083, 266 S.E.2d 108 (Va. 1980).

### B. WhipGolf Did Not Make a False Statement

Defendants allege that the "false statement" made by WhipGolf was in the declaration that accompanied each of WhipGolf's three "intent-to-use" trademark applications. PlusOne

argues that WhipGolf filed a false declaration for each intent-to-use trademark application because Plaintiffs had: (1) no bona fide intent to use the mark in commerce; and (2) no reasonable belief that "no other person has the right to use the mark in commerce." PlusOne is wrong. WhipGolf's declarations were true as a matter of law.

### 1. Because PlusOne was unlawfully using the "FLING" marks, WhipGolf had a reasonable belief that "no other person ha[d] the right to use the mark in commerce."

Defendants attempt to turn an accurate declaration made by a patent attorney with 20-years of experience into a controversy about whether PlusOne has senior user common law rights sufficient to support a federal trademark application based on prior "actual, lawful sales made in interstate commerce." Because PlusOne had no actual lawful sales, it had no "right" to use either mark.

It is undisputed that PlusOne abandoned its intent-to-use federal trademark applications. Statement of Facts ("SOF" at ¶¶ 3-4). That indisputable abandonment, alone, is sufficient to support the truthfulness of each WhipGolf declaration.

Defendants recognize this flaw and seek to make the issue about whether PlusOne had senior user *common law rights* by virtue of their use of the marks prior to their abandonment of the federal applications. Defendants' arguments fail because common law rights sufficient to make PlusOne a senior user can only be obtained through *lawful* use.

"'Trademark rights, either at common law or under the Lanham Act, are acquired and maintained only by lawful use.'" *Geraghty Dyno–Tuned Products, Inc. v. Clayton Mfg. Co.,* 190 U.S.P.Q. (BNA) 508, 512 (T.M.T.A.B. 1976) (quoting *Cameo, Inc. v. Plough, Inc.,* 185 U.S.P.Q. (BNA) 228, 230 (N.D. Ohio 1975)); *see also CreAgri, Inc. v. USANA Health Scis.,* 474 F.3d 626, 630 (9th Cir. 2007) (only lawful use in commerce can establish trademark rights). "[T]he Patent

and Trademark Office has consistently held that use of a mark in connection with unlawful shipments does not give rise to rights in the mark that may be recognized." *Geraghty,* 190 U.S.P.Q. (BNA) at 511; *see also Erva Pharmaceuticals, Inc. v. American Cyanamid Co.,* 755 F. Supp. 36, 40 (D.P.R. 1991) (unlawful use of trademark cannot be basis on which to enforce rights as trademark owner and senior user of mark). Thus, senior common law trademark rights can only stem from the prior *lawful* use of a mark in commerce. *See Heinemann v. General Motors Corp.,* 342 F. Supp. 203, 206 (N.D. Ill. 1972), *aff'd without op.,* 478 F.2d 1405 (7th Cir. 1973); *accord High 5 Games, LLC v. Int'l Game Tech.*, No. 15 C 2133, 2015 WL 5921804, at *6 (N.D. Ill. Oct. 8, 2015)**.**

Only the owner of a trademark registered in the United States may legally display with the mark a notice of that registration, such as the registration symbol consisting of "the letter R enclosed within a circle." 15 U.S.C. § 1111 ("®"). The improper use of a ® registration notice in connection with an unregistered mark, if done with intent to deceive the purchasing public or others in the trade into believing that the mark is registered, is a ground for denying the registration of an otherwise registrable mark. *Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 1101 (C.C.P.A. 1976); *see also Johnson Controls, Inc. v. Concorde Battery Corp.,* 228 U.S.P.Q. 39, 44 (TTAB 1985); *Libbey–Owens–Ford Glass Co. v. Plastron, Inc.,* 80 U.S.P.Q. 591, 592 (Comm'r Pat. 1949); *Weil & Durrse v. United Piece Dye Works,* 70 U.S.P.Q. 36, 37 (Comm'r Pat. 1946).

In *Johnson Controls,* the board set forth its position as follows:

> The improper use of the registration symbol by an applicant will defeat applicant's right to registration only in those cases where it is conclusively established that the misuse of the symbol was occasioned by an intent to deceive the purchasing public or others in the trade into believing that the mark was registered.

7

228 U.S.P.Q. at 44. *See also Copelands' Enterprises, Inc. v. CNV, Inc.*, 945 F.2d 1563, 1566 (Fed. Cir. 1991) (discussing all of the above); *Quality Service Group v. LJMJR Corp.*, 831 F. Supp. 2d 705, 709-10 (S.D.N.Y. 2011) (same).

It is undisputed that PlusOne was unlawfully using the FLING marks in conjunction with the ® symbol without obtaining a federal trademark registration and even after it had abandoned the federal registration effort on December 1, 2014. SOF ¶¶ 5, 10, 11. PlusOne used the ® symbol prolifically in a pattern of conduct over many months: on 100% of products sold, on its website (including media and logos intended for the press), in print advertising, on banners and signage, at tradeshows (including introducing the product at the 2015 PGA Merchandise Show in Orlando, FL, the industry's largest bringing together over 1,000 companies with over 41,000 attending PGA professionals, buyers, and industry leaders), in promotional videos, on a "Rules Card" and "Brochure for Players," and on its Twitter, Facebook, LinkedIn, Vimeo, Google+, Instagram, and YouTube websites. SOF ¶ 11. This ongoing misuse is unlawful as a matter of law.

Evans knew that PlusOne was misusing the ® symbol and had warned PlusOne about the consequences of misuse. SOF ¶ 9. PlusOne's continued misuse of the ® symbol even after being warned is evidence of a clear intent to deceive. In light of this known and intentional misuse, WhipGolf's declarations to the PTO that it believed no other party had the *right* to use either mark in commerce (PlusOne had no rights by virtue of illegal sales) were undeniably true as a matter of law.[2]

---

[2] At a minimum, even if PlusOne can establish prior lawful use, WhipGolf's good faith belief that a party who is misusing the ® symbol is unlawfully using marks shows a lack of malice in making the declaration to the PTO. Malice is an essential element of a slander of title claim.

## 2. WhipGolf had a bona fide intent to use each mark in commerce.

The statement that WhipGolf had a bona fide intent to use each mark in commerce was not false. First, there is no evidence that WhipGolf did not have a bona fide intent to use each mark in commerce. PlusOne makes the naked assertion, with no actual evidence, that WhipGolf had no bona fide intent to use each mark **when WhipGolf filed on February 3, 2015**.

The date is important. PlusOne relies on one single statement by Evans dated November 25, 2014, long before WhipGolf filed on February 3, 2015. Exhibit E to Narod Declaration. Evans's earlier statement was made in his individual capacity and in the context of negotiating what he thought was a binding Term Sheet. Evans's statement was also before PlusOne abandoned its trademark applications on December 1, 2014, and before PlusOne failed to revive its abandoned applications within the statutory period. PlusOne's abandonment and failure to revive changed the circumstances. Evans's intent months prior to PlusOne's abandonment is irrelevant to WhipGolf's intent on **February 3, 2015**, which was after the abandonment and cure period had expired.

Second, WhipGolf does have a bona fide intent to use each mark in commerce, either itself or with a licensee, which it assumed would be PlusOne. When PlusOne failed to petition to revive the abandoned marks, WhipGolf had a bona fide intent to use those marks itself or with a licensee, preventing an unrelated party from using them. Evans thought that the Term Sheet was enforceable. PlusOne was his licensee under the Term Sheet. He wanted PlusOne to be able to use the marks lawfully. As proof of this, he made an offer (completely outside of the settlement context) to license the marks to PlusOne for $1.00, an offer that PlusOne inexplicably refused.

"The bar for showing bona fide intent is *not high*." *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 1378 (Fed. Cir. June 4, 2015). In *M.Z. Berger*, the Federal Circuit provided a

9

lengthy discourse on the law concerning intent-to-use trademark applications. The court said that "[t]he TLRA changed the Lanham Act by permitting applicants to begin the registration process before actual use of the mark in commerce at the time of filing, so long as the applicant had a "bona fide intention . . . to use [the] mark in commerce" at a later date. *Id*. at 1374.[3]

The court further opined that "whether an applicant has a bona fide intent to use a mark in commerce is an objective inquiry based on the totality of the circumstances." *Id*. at 1379.

> The PTO has promulgated a rule specifying that an applicant's ongoing efforts to make use of a mark "may include product or service research or development, market research, manufacturing activities, promotional activities, steps to acquire distributors, steps to obtain governmental approval, or other similar activities." 37 C.F.R. § 2.89(d). Although this rule relates to the required showing of "good cause" for an extension to file a statement of use, i.e., ***at a time after the initial filing***, **such evidence may also indicate sources of objective evidence of an applicant's bona fide intent to use the mark in commerce**.

*Id*. at 1376 n.5 (emphasis added).

In the totality of the circumstances, WhipGolf plainly had a bona fide intent to use the marks in commerce when the applications were filed February 3, 2015. The following facts are undisputed and are all objective evidence of intent to use the marks in commerce:

(1) Evans filed patent applications for a product that falls within the class of goods recited (one application has already resulted in an issued U.S. Patent No. 9,149,695 and the other application has been allowed by the USPTO); other patent applications remain pending and are in the ongoing patent prosecution process. Exhibit F to Narod Declaration at ¶ 3;

---

[3] The Federal Circuit also recited applicable legislative history. "By permitting applicants to seek protection of their marks through an 'intent to use' system, there should be no need for 'token use' of a mark simply to provide a basis for an application. The use of the term 'bona fide' is meant to eliminate such 'token use' and to require, based on an objective view of the circumstances**, a good faith intention *to eventually use the mark in a real and legitimate commercial sense*." *Id*. at 1374 (emphasis added).

(2)     WhipGolf was formed to manufacture throw golf products covered by Evans's patent applications. Exhibit F to Narod Declaration at ¶ 4;

(3)     Evans hired an industrial designer, created CAD files, created prototypes by way of 3D-printing, urethane casting, and other rapid prototyping processes such as CNC machining. Exhibit F to Narod Declaration at ¶ 5;

(4)     WhipGolf sourced suppliers for all constituent parts of the Evans apparatus. Exhibit F to Narod Declaration at ¶ 6;

(5)     WhipGolf sourced grips (from several suppliers), it sourced shafts, it investigated tooling manufacturers, and it actually manufactured tooling (at significant expense) for injection molding of throwing heads to be assembled on the shafts. Exhibit F to Narod Declaration at ¶ 7;

(6)     WhipGolf has a capacity to produce and manufacture goods identified in the trademark application. Exhibit F to Narod Declaration at ¶ 8;

(7)     WhipGolf has a supply chain in place. Exhibit F to Narod Declaration at ¶ 9;

(8)     WhipGolf has a functioning website, a functioning e-commerce portal, and can take and process orders for throw golf product. Exhibit F to Narod Declaration at ¶ 10;

(9)     WhipGolf spent time and money to conduct market research, including to attend the PGA Merchandising Show in Orlando, Florida, in January, 2015. Exhibit F to Narod Declaration at ¶ 11;

(10)    WhipGolf continues to conduct market research. Exhibit F to Narod Declaration at ¶ 12;

(11)    Evans wrote long-form rules for the game of throw golf and published them before either trademark application was filed. Exhibit F to Narod Declaration at ¶ 13;

(12)    Evans believed the Term Sheet was an enforceable agreement. Exhibit F to Narod Declaration at ¶ 14; and

(13)    WhipGolf's product development, market research, manufacturing activities, customer outreach, steps to acquire distributors, and steps to obtain governmental approval via patents are ongoing efforts in a very young and developing market for a novel sport. Exhibit F to Narod Declaration at ¶ 15.

Thus, WhipGolf, LLC had at the time of filing each application, and continues to have, "a good faith intention *to eventually use the mark in a real and legitimate commercial sense*."

   3. **After-filing activities by an applicant are also objective evidence of a bona fide intent to use the marks in commerce.**

  The Federal Circuit in *Berger* stated that: "Neither the statute nor the legislative history indicates the specific quantum or type of objective evidence required to meet the bar" of bona fide intent, but reiterated "the bar for showing bona fide intent is *not high.*" *Berger*, 787 F.3d at 1378 (emphasis added). The Federal Circuit clarified that even activities occurring "a time after the initial filing" are relevant in the totality of the circumstances. The Court said, "such evidence [existing a time after the initial filing] may also indicate sources of objective evidence of an applicant's bona fide intent to use the mark in commerce." *Id*. at 1376 n.5.[4]

  As further post-filing evidence of a bona fide intent to use the trademarks, WhipGolf continues to engage in patent prosecution, product development and design, market research, manufacturing activities, customer outreach, licensing opportunity development, distributor relationship development, and sales staff development. By way of example, WhipGolf conducted a marketing study October 25, 2015 in Alexandria, VA. Exhibit F to Narod Declaration at ¶ 16. WhipGolf has done design and typography work for each mark for product labels and to provide to the shaft manufacturer. Exhibit F to Narod Declaration at ¶ 17. Evans continues to take steps to obtain governmental approval and market advantage, for example by ongoing prosecution of patent applications. Exhibit F to Narod Declaration at ¶ 18. These patent applications are public record and alone show an intent *to eventually use the mark in a real and*

---

[4]  An intent-to-use application carries with it the obligation of the applicant to prove an actual use in commerce. This actual use in commerce can be shown by submitting specimens, in a Statement of Use, **up to 3 years** after the intent to use application was filed. That is, an intent to use applicant may actually use the mark in commerce, say, two and a half years or more after first filing its application. *Berger*, 787 F.3d at 1375 ("applicants are eventually required to show that the mark is being used in commerce before obtaining a registration on the mark").

*legitimate commercial sense* – the product disclosed in the patent application is the same type of goods specified in the trademark application.

Further, WhipGolf attempted to license the marks, which shows that WhipGolf intends to use the marks with a licensee. WhipGolf offered PlusOne a license to the marks for $1.00, who was commercially selling throw-golf product. PlusOne declined. Evidence of seeking to use the marks with a licensee objectively supports "a good faith intention *to eventually use the mark in a real and legitimate commercial sense*." *Berger*, 787 F.3d at 1374 (emphasis supplied).

The undisputed facts, when taken as a whole in the totality of the circumstances, demonstrate that WhipGolf had, at the time each declaration was filed, an intent to use the marks in commerce. Thus, WhipGolf's statement in each trademark declaration that it had a bona fide intent to use each mark in commerce was not a false statement as a matter of law. Without proof any false statement was made, which is an essential element of a slander of title claim, Plaintiffs are entitled to summary judgment.

### C. There Is No Evidence of Malice

Malice is an essential element of a slander of title claim. Last summer, Plaintiffs offered (outside of the settlement context) to license the disputed marks to PlusOne for $1.00. SOF ¶ 12. PlusOne refused the license. *Id*. Such conduct is hardly evidence of malicious intent.

Moreover, Mr. Evans consulted with two separate attorneys before WhipGolf filed its own trademark applications for the FLING marks. Neither attorney advised against the filing. SOF ¶ 7. That is the opposite of malice. Rather, it is evidence of extreme caution. Without proof of malice, which is an essential element of a slander of title claim, Plaintiffs are entitled to summary judgment.

### D. Defendants Have No Special Damages

Special damages are also an essential element of a slander of title claim. Defendants have no proof of *any* damages (they did not produce such proof during discovery, nor did they include such proof on their exhibit list), much less *special* damages. Accordingly, their slander of title claim must be dismissed as a matter of law. *Koz v. Wells Fargo Mortgage Co.*, 83 Va. Cir. 96, 2011 WL 8956203 at *5 (June 9, 2011); *Levine v. McLeskey*, 881 F. Supp. 1030, 1050 (E.D. Va. 1995), *aff'd in relevant part*, 164 F.3d 210 (4th Cir. 1998). Attorneys' fees associated with prosecuting this claim do not qualify as special damages. *Koz*, 2011 WL 8956203 at *3 (It is a "time-honored tradition and well-established rule" in Virginia that attorneys' fees are not regarded as special damages).[5]

### III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTERCLAIM 6 – NO INTENTIONAL ABANDONMENT – BECAUSE PLUSONE'S SUBJECTIVE INTENT IS NOT RELEVANT TO ANYTHING AND THE PTO HAS PRIMARY JURISDICTION

### A. PlusOne's Intent Is Not Relevant

Defendants seek a declaratory judgment that PlusOne did not "intentionally abandon" the FLING marks. Plaintiffs are entitled to summary judgment because PlusOne's subjective intent in abandoning its intent-to-use trademark applications is <u>not relevant</u> to anything. Under the Lanham Act and USPTO rules, failure to make certain showings, or to request extensions absent the making of a showing of actual use in commerce, results in <u>automatic</u> abandonment regardless of intent.

---

[5] Defendants may contend that they have incurred damages in the form of unspecified attorneys' fees associated with the currently stayed trademark proceedings. Defendants have merely filed a five-page Notice of Opposition at the USPTO. They then agreed to stay that action. With the contract action being dismissed, and no federal claims remaining in the case, the amount of "damages" associated with filing the Notice of Opposition cannot come even close the $75,000 threshold necessary for subject matter jurisdiction.

14

> Section 1(d) of the Trademark Act, 15 U.S.C. §1051(d), requires that a statement of use be filed within six months after the issuance of the notice of allowance, or before the expiration of a previously granted extension of time to file a statement of use. 37 C.F.R. §2.88(a)(1). If the mark is not in use in commerce before the expiration of the six-month period following the issuance of the notice of allowance, the applicant must file a request for an extension of time to file a statement of use within the six-month period to avoid abandonment of the application. See 15 U.S.C. §1051(d)(4); 37 C.F.R. §2.89.

TMEP § 1100, 1714, 37 C.F.R. § 2.66(a)(1).

There is no need for the Court to expend judicial resources issuing a declaratory judgment on a declarant's state of mind that is relevant to nothing.

  **B.**  **Even If PlusOne's Intent Were Relevant, the Court Should Dismiss This Claim Based on the Doctrine of Primary Jurisdiction**

The question of PlusOne's ability to revive abandoned marks by filing a second set of applications is presently pending before the USPTO. It is not clear that the Court even has the power to grant the relief Defendants requested. Defendants cite to no statutory basis for this cause of action. It does not exist under the Lanham Act.

Even if the Court had the power to address the issue, it would be prudent for the Court to abstain from ruling pending a determination of the issue by the administrative body charged with granting federal trademarks. After the pre-requisite administrative proceedings have concluded, the Defendants may or may not have a basis for appealing or seeking a declaratory judgment in this Court.

In the context of registration of trademarks, the PTO has primary jurisdiction. *Goya Foods, Inc. v. Tropicana Prods., Inc.* 846 F.2d 848, 851-53 (2d Cir. 1988); *Nike, Inc. v. Already, LLC*, 2011 WL 310321 at 7 n.3 (S.D.N.Y. Jan. 20, 2011). The doctrine of "primary jurisdiction" is a version of the administrative exhaustion requirement under circumstances in which a claim is presented but "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pacific R.R.,* 352 U.S. 59, 64 (1956).

The rationale for the doctrine is two-fold. First, it ensures "'[u]niformity and consistency in the regulation of business entrusted to a particular agency.'" *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 303-04 (1976) (quoting *Far East Conference v. United States,* 342 U.S. 570, 574 (1952)). Second, the doctrine is intended to recognize that, with respect to certain matters, "the expert and specialized knowledge of the agencies" should be ascertained before judicial consideration of the legal claim. *Western Pacific R.R.,* 352 U.S. at 64.

The USPTO administers the registration of federal trademarks. There is no dispute that PlusOne abandoned its two intent-to-use trademark applications, Serial No. 86/104293 and Serial No. 86/104357 (all the while continuing to unlawfully use the ® symbol, including on 100% of its products actually sold). PlusOne did not file <u>any</u> statement of use or a timely petition to revive the abandoned marks as required under the Lanham Act.

PlusOne's time to file a statement of use expired and it failed to request an extension or file a timely petition to revive. The fact that PlusOne claims to have "intended" to file a petition to revive within the statutory period, but did not, is irrelevant. PlusOne's applications were abandoned. Thereafter, the period to revive the applications lapsed.

Those two facts have significance. Defendants' recourse, if any, is not in this Court but before the PTO – where they have never explained their long history of actual *illegal* sales using the ® without having a federal trademark registration or their failure to timely revive their abandoned applications. Plaintiffs are entitled to summary judgment on Counterclaim 6.

## IV. COUNTERCLAIM 7 – THE CHAPTER 93A CLAIM – SHOULD BE DISMISSED BECAUSE THE ALLEGED BAD ACTS DID NOT OCCUR PRIMARILY AND SUBSTANTIALLY IN MASSACHUSETTS

Evans renews his Motion for Summary Judgment on Count 7 (ECF No. 48) and incorporates by reference the arguments and evidence previously submitted in support of that

16

motion (ECF Nos. 49, 127). The basis for that motion was that M.G.L.A. Chapter 93A requires that the allegedly unfair conduct have occurred "primarily and substantially" in Massachusetts.[6] Evans never set foot in Massachusetts.

The evidence submitted in support of that motion showed that Evans's only contacts with Massachusetts were via telephone and e-mail, usually at the initiation of PlusOne. E-mail and telephone contacts are insufficient as a matter of law to meet the "primarily and substantially" threshold. In any event, virtually all of the other "bad acts" complained of are not (as shown above) "bad" and, more importantly, they occurred exclusively in Virginia. The contention that Evans's actions with respect to the trademark applications could violate Chapter 93A are refuted by the facts and arguments in this motion.

The argument that Evans did something "bad" or "unfair" by filing a design patent application to patent a unique ornamental design is equally unavailing. First, Evans filed that patent application from his home in Virginia at the Patent Office, which is located two blocks from this Court. Evans's actions, thus, have nothing to do with Massachusetts. That ends the relevance of that argument. Second, the Patent Office has primary jurisdiction over the initial patentability of an invention. As Mr. DiMuro argued at the last hearing, since the Court determined that the Term Sheet is not enforceable, it should let the parties fight out patent issues at the Patent Office.

---

[6]   *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.,* 329 F.3d 216, 236 (1st Cir. 2003) (no Chapter 93A liability when "virtually all the conduct that can be said to be unfair or deceptive" occurs outside the Commonwealth, even if other "ancillary" conduct took place in Massachusetts (quotation marks omitted)). "[I]f the significant contacts of the competing jurisdictions are approximately in the balance, the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts." *Fishman Transducers, Inc. v. Paul,* 684 F.3d 187, 197 (1st Cir. 2012) (Souter, J.) (quotation marks omitted).

Third, design patents protect ornamental designs, not the functional aspects of an invention. *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238 (Fed. Cir. 1986). Defendants have consistently sought to confuse this issue by arguing that the functional aspects of the PlusOne product are similar to the Evans *design* and that somehow shows that Evans copied the *ornamental* features of the PlusOne product. This is an apples-to-oranges comparison that proves nothing and is designed strictly to confuse. Evans was first to conceive of novel function and design (no later than February 28 2012), and there is nothing improper about him seeking patents. Fifth, as a matter of law, Evans's U.S. Patent No. 9,149,695 contains Figures 69A-J, and the patent, including those figures, has a legal priority date of February 28, 2012. Defendants do not allege to have conceived before Evans. Defendants do not challenge any of Evans's U.S. Patent No. 9,149,695 or its validity whatsoever. Evans's U.S. Patent is presumed valid.

Accordingly, Plaintiffs are entitled to summary judgment on Counterclaim 7.

## CONCLUSION

For the reasons set forth, Plaintiffs are entitled to summary judgment on Counterclaims 5, 6, and 7.

DATED:  April 8, 2016                                   Respectfully submitted,


       /s/ Andrew J. Narod
Laurin H. Mills (VSB #79848)
Andrew J. Narod (VSB #79691)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA  22314
(703) 647-5903
(703) 647-5953 (fax)
Laurin.mills@leclairryan.com
Andrew.narod@leclairryan.com

*Attorneys for Plaintiffs*
*Curtis A. Evans and WhipGolf , LLC*

19

## **CERTIFICATE OF SERVICE**

  I hereby certify that on April 8, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to counsel of record who are registered with CM/ECF.

                /s/
               Andrew J. Narod